UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KERNEN CONSTRUCTION and BUNDY & SONS, INC. d/b/a BUNDY & SONS LOGGING,<br><br>    Defendant. | No. 2:17-cv-01424 WBS DMC<br><br>ORDER RE MOTION TO DISQUALIFY |

----oo0oo----

Currently before the court is plaintiff's motion to disqualify defendants' expert witnesses, Carson G. Engelskirger ("Engelskirger") and Franklin O. Carroll ("Carroll").

A district court has broad discretion to make evidentiary rulings conducive to the conduct of a fair and orderly trial, and within this discretion lies the power to disqualify expert witnesses. <u>Campbell Indus. v. M/V Gemini</u>, 619 F.2d 24, 27 (9th Cir. 1980) (citation omitted). Nevertheless,

disqualification is a drastic measure that courts should use reluctantly and rarely. Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004).

Plaintiff's claim that it is entitled to the remedy of expert disqualification rests on three arguments: (1) through their agents Engelskirger and Carroll, defense counsel improperly contacted represented parties in violation of California Rule of Professional Conduct 2-100 ("Rule 2-100"); (2) defendants' counsel violated California's Business and Professional code and this court's Local Rules by making deceitful misrepresentations both during their ex parte contacts with plaintiff's employees and during communications with plaintiff's counsel about these contacts; and (3) defendants' conduct is so egregious and prejudicial that the disqualification of Carroll and Engelskirger is necessary to safeguard plaintiffs against further prejudice. The court will address each of these arguments in turn.

I. Ex Parte Communications

Rule 2-100 governs an attorney's communications with a represented party. It holds that:
> [w]hile representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

Cal. Rul. Prof'l Conduct 2-100(A). The rule's proscription against attorneys' "indirect" contact with represented parties encompasses contact between retained experts and an adverse represented party. See Coleman v. Brown, 938 F. Supp. 2d 955 (E.D. Cal. 2013) (Karlton, J.); In re Katrina W., 31 Cal. App. 4th 441 (2d Dist. 1994).

Courts have routinely limited the application of rule 2-100 to situations where the attorney has actual knowledge that a given party is represented; it is not enough that an attorney "should have known" that a party was represented. Truitt v. Superior Court, 59 Cal. App. 4th 1183, 1188 (2d Dist. 1997). "[L]awyers should not be at risk of disciplinary action for violating rule 2-100 because they should have known that an opposing party was represented or would be represented at some time in the future." Snider v. Superior Court, 113 Cal. App. 4th 1187, 1215 (4th Dist. 2003)(quotations omitted).

Rule 2-100(B) contains another limitation on the scope of Rule 2-100. It clarifies that for the purposes of the rule, the definition of a "party" includes "[a]n officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership." Cal. Rul. Prof'l Conduct 2-100(B). An employee of an association or corporation also constitute a "party" under the rule if "the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." Id.

It is undisputed that defendants' counsel, via experts Carroll and Engelskirger, had indirect ex parte contact with forest service employees. (Kernen Construction's Opp'n to Pl.'s Mot. to Disqualify Experts at 2-3 (Docket No. 72).) These ex parte communications occurred between January 21, 2015 and January 26, 2018. (Decl. of Carson Engelskirger ¶¶ 2-10 (Docket

3

No. 61-4); Decl. of Franklin Carroll ¶¶ 2-10 (Docket No. 71-2).) They consist of: a 15-60-minute fact finding mission to a USFS office; two telephone conversations with Forest Service employees; three emails to Forest Service employees; two unanswered voicemail messages for Forest Service employees; and one 5-minute conversation with a Forest Service receptionist. (Kernen Construction's Opp. to Pl.'s Mot. to Disqualify Experts at 2-3.)

These facts, in and of themselves, however, do not constitute a violation of Rule 2-100. To determine whether a violation of Rule 2-100 occurred, the court must consider both whether defendants' counsel had actual knowledge that the plaintiff was represented by counsel at the time of the ex parte contacts, and whether the employees contacted were "parties" for the purposes of Rule 2-100. Snider, 113 Cal. App. 4th 1187.

Although the plaintiff's Motion to Disqualify Expert Witnesses often conflates the alleged misconduct of Bundy and Kernen's counsel, most of its relevant arguments concern Kernen's counsel exclusively. Moreover, Bundy did not retain Carroll or Engelskirger until after the majority of the ex parte communications. (Bundy & Sons, Inc.'s Opp. To Mot. to Disqualify Expert Witnesses at 3.) Defendants' communication with Carroll and Engelskirger was also handled exclusively by Kernen's counsel. Id. For these reasons, the court's analysis will focus on the threshold question of whether or not Kernen's counsel violated Rule 2-100.

A.  Actual Knowledge

Plaintiff argues that as of September 2014 Kernen's counsel had actual knowledge that the USFS was represented by counsel with respect to the Flat Fire.  (Mot. to Disqualify Expert Witnesses at 7.)  This contention rests on an alleged "notification of representation" contained in a 2012 Report of Investigation about the Flat Fire.  Id.  In response to a FOIA request, the report was provided to Kernen's counsel on September 30, 2014.  (Decl. of Benjamin Wolinsky ¶ 4 (Docket No. 61-2).)  The putative "notification of representation" is a single line: "[t]his case has been referred to the United States Department of Agriculture Office of the General Counsel for further consideration."  (Mot. to Disqualify Expert Witnesses at 7.)

In Jorgensen v. Taco Bell, 50 Cal. App. 4th 1398 (1st Dist. 1996), the court considered whether the knowledge that many corporations employ house counsel that are likely to be involved in representing it in future litigation constitutes actual knowledge that its employees are represented parties under Rule 2-100.  In rejecting this proposition, the court remarked that, "Numerous corporations in America have fullor [sic] part-time house counsel.  That knowledge or presumptive knowledge does not trigger the application of rule 2-100 [sic], unless the claimant's lawyer knows in fact that such house counsel represents the person being interviewed when that interview is conducted."  Id. at 402.

Analogizing to the court's finding in Jorgensen, the vague statement that the Flat Fire ROI was "referred to . . . General Counsel for further consideration" does not show that

Kernen's attorneys knew or even should have known that the Forest Service was represented in matters connected to the fire. For this reason, the court agrees with defendants' contention that their counsel did not gain actual knowledge that the USFS was represented when they read the report. Since actual knowledge that a party is represented by counsel is a necessary element of a Rule 2-100 violation, the court holds that none of the ex parte contacts which occurred before November 24, 2015 constitute violations of Rule 2-100.

None of the parties contest that by November 24, 2015, Kernen's counsel had actual knowledge that the USFS was represented by counsel in the Flat Fire matter. (Decl. of Michele Kirrane ¶ 8 (Docket No. 72-2); Decl. of Charles Horn ¶ 7 (Docket No. 72-1)). Three ex parte communications between defendants' witnesses and Forest Service employees occurred after this date: at some unknown point between December 2015 and March 2018, Frank Carroll left a voicemail message for an unknown park service employee; on January 26, 2018 Carroll and Engelskirger made a brief inquiry with a receptionist at the Forest Service's Weaverville Office; and on January 26, 2018 Carroll and Engelskirger left a voicemail with an unknown Forest Service employee. (Decl. of Carson Engelskirger ¶ 9; Decl. of Franklin Carroll ¶ 9). Neither Carroll's voicemail nor the voicemail left by Carroll and Engelskirger on January 26, 2018 garnered a response. (Kernen Construction's Opp. to Pl.'s Mot. to Disqualify Experts at 3.)

To determine whether these communications constitute a violation of Rule 2-100, the court now turn to the question of

whether the Forest Service's employees contacted were "parties" to the Flat Fire matter under Rule 2-100.

    B.    <u>"Party Requirement"</u>

Plaintiff does not explain its theory that the receptionist and two unknown Forest Service employees for whom the experts left voicemails between late 2015 and early 2018 are parties to the Flat Fire matter for the purposes of Rule 2-100. Presumably, it wants the court to infer that as employees of the Forest Service, these individuals are inevitably parties to the Flat Fire matter. Or, it wants the court to assume that if these employees, like the district planner, had "vast knowledge," (Reply in Supp. of the Mot. to Disqualify Expert Witnesses at 3 (Docket No. 83).), then they were, by virtue of that knowledge, "parties" to the Flat Fire matter.

But these readings are foreclosed by both the text of Rule 2-100 itself and judicial interpretations of its scope, which have held that only those with "substantial discretionary authority over decisions that determine organizational policy" are "managing agents" for the purposes of Rule 2-100. See <u>Snider v. Superior Court</u>, 113 Cal. App. 4th 1187, 1209 (4th Dist. 2003). The expertise necessary for the analysis of a management situation, does not necessarily indicate that a given employee exercises discretionary control over that situation.

There is similarly no evidence that the receptionist or either of the two employees for whom voicemails were left had the authority to speak for or bind the Forest Service. See <u>Ballardo v. City of Nat'l City</u>, No. 07-CV-1956 DMS LSP, 2008 WL 11336694, at *3 (S.D. Cal. Jan. 28, 2008) (holding that the test for

whether an employee is a party to a matter under Rule 2-100(B)(2) is not whether his statements could be used against their employer, but rather "whether he has authority to speak for and bind" the employer). Nor does the record suggest that the subject of the experts' communications with these employees was the employees' acts or omissions in connection with Flat Fire matter. Cf. San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc., 213 Cal. App. 4th 1212 (1st Dist. 2013) (holding that a mechanic employed by a school bus contractor was presumably a party to litigation for the purposes of Rule 2-100 if he spoke about his "acts or omissions" as a bus mechanic with counsel representing plaintiffs in litigation regarding the contractor's allegedly inadequate maintenance of its busses).

Simply put, plaintiffs have not presented the court with any evidence to counter defendants' assertion that the receptionist and forest service officers with whom the experts communicated after November 24, 2015 were "low-level" employees who were not parties to the Flat Fire matter under Rule 2-100. (Kernen Construction's Opp. to Pl.'s Mot. to Disqualify Experts at 6—8.) Accordingly, the court finds that defendants' contact with these employees did not violate Rule 2-100 because these employees were not "parties" for the purposes of the rule.

II. Misrepresentation and Deceit

The plaintiff also argues that the court should disqualify defendants' witnesses because of the deceitful misrepresentations they made during the ex parte contacts as well as during discussions with plaintiff about those contacts. (Mot. to Disqualify Expert Witnesses at 8-9.)

8

Frank Carroll is a partner in a forest management firm and his fluency in forestry management jargon is presumably a large part of his professional identity. Defendant's suggestion that Carroll was deceitful in sharing some shop talk ("speaking Klingon") with a forest service employee, Id. at 9, is thus farfetched. Would Carroll have more faithfully and honestly represented himself if he feigned total ignorance of the terminology used by forestry professionals and spoke in only popular vernacular that he knew to be imprecise? The court thinks not. The plaintiff's reply in support of its motion to disqualify expert witnesses reiterates the allegedly deceitful nature of Carroll's use of "code language" with forest service employees, but it points to no additional examples of misrepresentation or deceit by Carroll and Engelskirger. (See Reply in Supp. of the Mot. to Disqualify Expert Witnesses at 7). The court finds none.

The court is similarly unpersuaded by plaintiff's claim that Kernen's counsel has violated state and local court rules through deceitful misrepresentation made to plaintiff's counsel. (Mot. to Disqualify Expert Witnesses at 9.) Based on the record, it seems that any difficulty defendants have had in responding to requests for information about when they learned about the witnesses' communications with Forest Service employees stems more from the de minimis nature of these contacts than from any dissimulation on defendants' counsel's part.

Accordingly, the court holds that defendants' counsel has not violated state or local court rules prescribing deceitful conduct.

III. Remedy

Both Carroll and Engelskirger have declared under oath that they will not mention their ex parte communications with Forest Service employees at trial, and will not rely on information gained through these contacts in supporting their opinions. (Decl. of Carson Engelskirger ¶ 16; Decl. of Franklin Carroll ¶ 16.) Given that defense counsel's conduct at no point violated Rule 2-100 or state and local court rules against deceit and misrepresentation, the exclusion of information gained via ex parte communications more than adequately safeguards plaintiffs against prejudice. It is also evident that the drastic remedy plaintiff seeks could unduly prejudice the defendants' ability to fully present their case at trial.

IT IS THEREFORE ORDERED that plaintiff's motion to disqualify expert witnesses (Docket No. 61) be, and the same hereby is, DENIED.

Dated: October 16, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE