UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KERNEN CONSTRUCTION and BUNDY & SONS, INC. d/b/a BUNDY & SONS LOGGING,<br><br>Defendant. | No. 2:17-cv-01424 WBS DMC<br><br>MEMORANDUM AND ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

----oo0oo----

Plaintiff brought this action against defendants Kernen Construction ("Kernen") and Bundy & Sons, Inc. d/b/a Bundy & Sons Logging ("Bundy"), alleging claims of negligence under a theory of respondeat superior and trespass by fire, and seeking a declaratory judgment that California Health & Safety Code § 13009.2 ("Section 13009.2") is unconstitutional and inapplicable to the claims brought by the United States. (First Am. Compl. (Docket No. 43).) Before the court are plaintiff's (Docket No. 58) and intervenor defendant California Forestry Association's

1

("CFA") (Docket No. 63) cross Motions for Partial Summary Judgment as to the claim for declaratory relief, and plaintiff's Motion for Partial Summary Judgment as to defendants' Affirmative Defenses (Docket No. 60).[1]

I. Factual and Procedural Background

This action stems from the Flat Fire, which ignited in July 2012 along a highway through the Shasta-Trinity National Forest. On July 10, 2017, plaintiff brought a complaint[2] against defendants Bundy and Kernen for damages resulting from the fire. (Compl. (Docket No. 1).) Plaintiff alleges that employees of defendants Bundy and Kernen negligently started the fire while transporting heavy logging equipment along the highway. (FAC ¶¶ 7, 12.) After an investigation, National Forest Service investigators determined that the fire started when defendants' equipment came unsecured and dragged along the highway, creating sparks. (Id. ¶ 16.) Ultimately, the Flat Fire burned approximately 1,608 acres of National Forest System lands, and an additional 80 acres of private land. (Id. ¶ 17.)

In addition to its claims for damages, plaintiff seeks a declaratory judgment that Section 13009.2 is inapplicable as to claims brought by the United States.[3] The California Legislature

---

[1] Because defendants do not oppose plaintiff's Requests for Judicial Notice (Docket Nos. 59 & 73-2) and the court finds the materials in the Requests are properly subject to judicial notice, the court hereby GRANTS the Requests.

[2] Plaintiff amended its complaint on July 26, 2018 to add claims for negligent supervision and negligent hiring. (First Amended Complaint ("FAC") ¶¶ 36-46 (Docket No. 43).)

[3] Initially, CFA argued that plaintiff did not comply with the rules requiring plaintiff to inform the Attorney General of California that it challenges the constitutionality of a California statute. (CFA Mot. for Partial Summ. J. at 20.) The

passed Section 13009.2 in 2012 as part of Assembly Bill 1492, a budget bill that addressed Timber Harvest Plans and imposed taxes on lumber products. 2012 Cal. Legis. Serv. 289 (A.B. 1492). Section 13009.2 applies to civil actions brought by public agencies seeking damages caused by fire. Under this statute, any pecuniary damages sought must be quantifiable and cannot be unreasonable in relation to the prefire market value of the property. Public agencies can recover ecological and environmental damages, but the prefire fair market value of the property is a relevant factor in assessing the reasonableness of those damages. Finally, if public agency plaintiffs claim environmental damages, they cannot seek to enhance their pecuniary or environmental damages. The statute defines public agencies to include both the United States and California and any political subdivisions thereof. The statute does not apply to private plaintiffs.

III. Motions for Partial Summary Judgment

    A.    Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome

---

record shows that plaintiff filed a Notice of Claim of Unconstitutionality on July 10, 2017. (Docket No. 1-1.) Plaintiff served that document on the Attorney General on July 14, 2017. (Proposed Order Certifying a Constitutional Challenge (Docket No. 66).) The court certified a constitutional challenge to the Attorney General of California on September 25, 2018. Thus, it appears that the requirements of Federal Rule of Civil Procedure 5.1 have been satisfied. See Fed. R. Civ. P. 5.1(c) ("[T]he attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier.").

3

of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. Id. Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Cross Motions as to Declaratory Relief[4]

Plaintiff alleges that Section 13009.2 violates the United States Constitution because it discriminates against the United States by limiting the damages the United States may collect. It argues that Section 13009.2 violates the doctrine of intergovernmental immunities, U.S. Const. Art. VI, Cl. 2., and

---

[4] Because the United States brings this action, subject matter jurisdiction exists under 28 U.S.C. § 1345. United States v. City of Arcata, 629 F.3d 986, 990 (9th Cir. 2010). Accordingly, the court chooses to exercise its discretion under the Declaratory Judgment Act to entertain plaintiff's claim for declaratory relief. Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1224 (9th Cir. 1998) (en banc). As this claim for declaratory relief is purely legal, summary judgment is appropriate. Union Station Assocs., LLC. v. Puget Sound Energy, Inc., 238 F. Supp. 2d 1226, 1229 (W.D. Wash. 2002).

that Section 13009.2 is not an appropriate rule for federal common law.

CFA, in its motion for partial summary judgment, contends that (1) Section 13009.2 does not discriminate against the federal government and (2) Congress has provided clear and unambiguous authorization that California state acts may apply to the claims brought by the United States. CFA further argues that Section 13009.2 provides the basis for an appropriate rule of federal common law.

### 1. Intergovernmental Immunity

Under the doctrine of intergovernmental immunity, state law can violate the Supremacy Clause if it directly regulates the federal government or discriminates against it. North Dakota v. United States, 495 U.S. 423, 434 (1990); Boeing Co. v. Movassaghi, 768 F.3d 832, 839 (9th Cir. 2014). Even though the doctrine has traditionally applied in tax cases, courts have extended its reach to other contexts. United States v. California, 314 F. Supp. 3d 1077, 1089 (E.D. Cal. 2018) (Mendez, J.) (detailing the extension of the doctrine to other regulatory contexts). Plaintiff does not contend that it is directly regulated by Section 13009.2, so the focus of the inquiry is whether the statute discriminates against the federal government.

#### a. Discrimination against Federal Interests

A state statute discriminates against the federal government if it "treats someone else better than it treats them." North Dakota, 495 U.S. at 438 (citing Washington v. United States, 460 U.S. 536, 544-45(1983)). Courts inquire if the federal government is actually worse off compared to other

similarly situated actors. See id. Regardless, even if the federal government is worse off, a regulation can survive if significant differences between the two classes justify the burden. Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 816 (1989).

Section 13009.2 applies to all public agencies, state and federal, so CFA argues that this section does not facially discriminate against the federal government.[5] This argument misstates the relevant inquiry. A state regulation is discriminatory if it treats someone else, not just other public actors, better than the federal government. See North Dakota, 495 U.S. at 438 (citation omitted). The doctrine of intergovernmental immunity is concerned with political checks. Because the federal government does not have a direct voice in state legislatures, states can unfairly burden its operations by subjecting it to disparate treatment. See Washington v. United States, 460 U.S. 536, 545 (1983). As such, it is important that burdens also fall on private parties to ensure that there is a broad state constituency that can provide a political check against the abuse of a state's regulatory authority. See United

---

[5] Regardless, the federal government is the public agency most likely to file a lawsuit for damages caused by a fire. Approximately 60% of forestlands in California are owned by the federal government while state and local governments own only 3% combined. California Legislative Analyst's Office, Improving California's Forest and Watershed Management (April 2018), at 4—5. Moreover, the California Department of Justice believes that it has not made any claims for natural resource damage or a damages multiplier in fire cost recovery action from 2001 to the current date. California Department of Justice ("CDOJ"), Office of the Attorney General's Response dated August 27, 2018 to United States' Subpoena issued August 13, 2018; CDOJ's Response dated July 31, 2018 to United States' Subpoena issued July 16, 2018.

6

States v. Fresno Cty., 429 U.S. 452, 463 (1977) (explaining that it is unfair to exempt private individuals with beneficial interests from regulatory burdens); United States v. Lewis Cty., 175 F.3d 671, 676 (9th Cir. 1999) (citing Washington, 460 U.S. at 545) (finding that private citizens also must be affected by the exercise of a state's regulatory authority because they can use their votes to keep the State from acting excessively). It is simply insufficient that Section 13009.2 applies to all public entities, because it excludes private actors from its coverage.

Even though the statute only applies to public agencies, CFA argues that Section 13009.2 does not discriminate against the United States in practice. CFA contends that private plaintiffs face similar limitations in their recovery. This understanding of California law is incorrect for a few reasons.

First, Section 13009.2 uses prefire fair market value as an anchor for any measure of damages. Section 13009.2(a) requires any measure of pecuniary damages be quantifiable and not unreasonable in relation to the prefire fair market value of the property[6] and Section 13009.2(c) uses that market value as a relevant factor in measuring ecological and environmental damages. That statutory language discriminates against claims brought by the United States because National Forest Land often

---

[6] Section 13009.2(a) also limits recoverable pecuniary costs to two distinct categories: (1) restoration and rehabilitation costs and (2) short-term costs related to immediate damages. Neither of those categories appear to entitle the United States to recovery of lost rent or other profits. Private plaintiffs, however, are not subject to such a limitation because they can recover lost rental income. See, e.g., Kelly v. CB&I Constructors, Inc., 179 Cal. App. 4th 442, 459 (2d Dist. 2009) (affirming an award including $99,000 for lost rental income). This is another example of how the statute discriminates against the federal government.

7

has no market value. See United States v. CB & I Constructors, Inc., 685 F.3d 827, 834-35 (9th Cir. 2012) (citing Feather River Lumber Co. v. United States, 30 F.2d 642, 644 (9th Cir. 1929)). Instead, the Ninth Circuit has emphasized that the necessary damages calculation requires measuring what is necessary to make the government whole. Id. at 835. By tying the measure of all damages to the prefire fair market value of the land, Section 13009.2 systemically undervalues damage to National Forest Land, a federal interest. See generally id.; see also 16 U.S.C. § 551 (giving the Secretary of Agriculture authority to make provisions for the protection of national forests from destruction by fire).

Second, there is no requirement under California law that pecuniary, environmental, or ecological damages must factor in prefire fair market value of the property. Generally, California courts adopt whatever damages formula is most appropriate for the particular case. Mozzetti v. City of Brisbane, 67 Cal. App. 3d 565, 576 (2d Dist. 1977). Diminution in market value is not an absolute limitation on compensation and there is no fixed rule for determining the measure of damages for injury to property. Heninger v. Dunn, 101 Cal. App. 3d 858, 862 (1st Dist. 1980). Some California courts even have held that landowners may recover the value of trees without regard to the diminution in the value of land. Id. at 865; see also CB & I Constructors, 685 F.3d at 834-35 (finding that private landowners may recover damages for all harm caused by fires, even those more than the market value of the property). As such, Section 13009.2 limits how fire damages are calculated in actions brought by the federal government in a way that private parties are not limited.

8

While CFA points to the correct default rule for restoration costs, California law is not so settled that damages sought by all parties must be quantifiable, reasonable, or tied to the value of the property. See CB & I Constructors, 685 F.3d at 838 (citing United States v. Union Pac. R. Co., 565 F. Supp. 2d 1136, 1145 (E.D. Cal. 2008) (Damrell, J.)) (stating that the case law is clear that there is not one method for ascertaining plaintiff's damages resulting from a fire).

Third, Section 13009.2(d) discriminates against the federal government by preventing it from seeking damage enhancements where it seeks environmental damages. California state courts have reached different results on the question of whether plaintiffs can receive a tree damage multiplier for fire damage under Civil Code Section 3346. In Kelly v. CB&I Constructors, Inc., a panel for the Second District of the California Court of Appeal held that the plain language of section 3346 authorizes an award of double damages for any injury to trees caused by the trespass of fire. 179 Cal. App. 4th at 463—64. On the other hand, two different panels of the Third District have held that Civil Code Section 3346 does not apply to fire damage to trees. Scholes v. Lambirth Trucking Co., 10 Cal. App. 5th 590, 602 (3d Dist. 2017); Gould v. Madonna, 5 Cal. App. 3d 404, 408 (3d Dist. 1970). Accordingly, under one reading of California law, private plaintiffs can recover all property damage, including environmental damage, and enhanced damages for any damages to trees. Kelly, 179 Cal. App. 4th at 46-47. Section 13009.2(d) absolutely eliminates that possibility for public agencies by prohibiting those plaintiffs from seeking a

damage enhancement where they seek environmental damages.[7] Such disparate treatment of equally situated plaintiffs violates the doctrine of intergovernmental immunities.

Finally, CFA has not pointed to any significant differences between the two classes, public agencies and private actors, that justify disparate treatment. See Davis, 489 U.S. at 816. Both classes of potential plaintiffs may sue for damages caused by fire. And both classes of plaintiffs may seek damages for environmental harm that exceed the market value of the property damaged. See CB & I Constructors, 685 F.3d at 834. Even if the federal government may be more likely to receive damages not tied to a property's market value, see, e.g., United States v. Sierra Pac. Indus., 879 F. Supp. 2d 1096 (E.D. Cal. 2012) (Mueller, J.), those facts do not justify excluding private parties from the ambit of Section 13009.2. California would have an interest in applying any limits it thinks are sensible to private plaintiffs as well.[8] CFA has not identified a sensible

---

[7] CFA argues that Section 13009.2(d) treats the United States better than private plaintiffs by giving the United States the option to choose between environmental damages or a damage enhancement. CFA contends that damage enhancements are entirely foreclosed for private plaintiffs under one reading of California law. See Scholes, 10 Cal. App. 5th at 602; Gould, 5 Cal. App. 3d at 408. This argument misunderstands Section 13009.2. Section 13009.2 specifically states that "[t]his section is not intended to alter the law regarding whether Section 3346 of the Civil Code or Section 733 of the Code of Civil Procedure can be used to enhance fire damages." Therefore, same as a private plaintiff, the United States is not guaranteed to receive a damage enhancement even if it seeks one. Unlike a private plaintiff, however, the United States would be required to choose up front between environmental damages and a damage enhancement.

[8] In fact, Assembly Member Jim Nielsen introduced Assembly Bill 992 more than year before Section 13009.2 became law. A.B. 992 would have prevented any party from seeking damage enhancements for an escaping fire under Civil Code Section 3346. (Exhibit J, California Assembly Committee on Judiciary, Bill

10

distinction that could save this statute.

b. <u>Congressional Authorization</u>

Congress can provide "clear and unambiguous" authorization for state regulations that would otherwise be impermissible under the Supremacy Clause. <u>Goodyear Atomic Corp. v. Miller</u>, 486 U.S. 174, 180 (1988) (citations omitted). State regulation is permitted only to the extent that Congress has <u>clearly</u> authorized such regulation. <u>Id.</u> at 180 n.1.

CFA claims that intergovernmental immunity does not apply because 16 U.S.C. § 480 provides clear and unambiguous authorization for California to exercise legislative authority over national forest land. This federal statute provides that:

> The jurisdiction, both civil and criminal, over persons within national forests shall not be affected or changed by reason of their existence, except so far as the punishment of offenses against the United States therein is concerned; the intent and meaning of this provision being that the State wherein any such national forest is situated shall not, by reason of the establishment thereof, lose its jurisdiction, nor the inhabitants thereof their rights and privileges as citizens, or be absolved from their duties as citizens of the State.

16 U.S.C. § 480; <u>see also</u> <u>Wilson v. Cook</u>, 327 U.S. 474, 487 (1946) ("By this enactment Congress in effect has declined to accept exclusive legislative jurisdiction over forest reserve lands, and expressly provided that the state shall not lose its jurisdiction in this respect nor the inhabitants 'be absolved from their duties as citizens of the State.'"). The Ninth

---

Analysis of A.B. 992 at 4 (Docket No. 58-5).) It also would have limited monetary damages recoverable by <u>any person</u> to the difference between the fair market value of the land and timber affected by the fire in its prefire condition and the fair market value of the land and timber in its post-fire condition. (<u>Id.</u>)

11

Circuit has interpreted 16 U.S.C. § 480 to grant states concurrent criminal and civil jurisdiction over national forests. United States v. California, 655 F.2d 914, 919 (9th Cir. 1980).

Concurrent jurisdiction means that the territory at issue is subject to the plenary authority of both the federal government and the state. North Dakota, 495 U.S. at 429 n.2. Regardless, state control is still subject to the limitations of the intergovernmental immunity doctrine. For example, states do not have authority to tax directly a federal instrumentality in an enclave over which the United States exercises concurrent jurisdiction. United States v. State Tax Comm'n of Miss., 421 U.S. 599, 614 (1975) ("[I]t is a 'patently bizarre' and 'extraordinary conclusion' to suggest that the Twenty-first Amendment abolished federal immunity as respects taxes on sales to the bases where the United States and Mississippi exercise concurrent jurisdiction."). Similarly, the Supreme Court in Fresno County evaluated if the tax at issue was discriminatory even though the state had concurrent regulatory authority under 16 U.S.C. § 480. See 429 U.S. at 464–67 ("The tax can be invalidated . . . if it discriminates against the Forest Service or other federal employees."). Even though this statute provides consent to some state regulation, it is not clear nor unambiguous that it provides consent to discriminatory regulation.[9]

---

[9] CFA argues that it would be inequitable and unfair to allow the United States to rely on other sections of California law while avoiding these damages rules. (CFA Opp'n to United States' Mot. for Partial Summ. J. at 9 (Docket No. 75).) The appropriateness of borrowing state law is different from inquiring whether the law discriminates against the federal government and violates the doctrine of intergovernmental immunity. Cf. United States v. Little Lake Misere Land Co., 412 U.S. 580, 608 (1973) (Rehnquist, J., concurring).

Accordingly, Section 13009.2 is unconstitutional as applied to claims brought by the United States.[10]

### C. Plaintiff's Motion as to Defendants' Affirmative Defenses

Kernen and Bundy raise affirmative defenses of comparative fault, failure to mitigate damages, and "setoff/recoupment" to plaintiff's FAC.[11] In its motion, plaintiff argues that it is entitled to summary judgment as to these defenses under principles of sovereign immunity. More specifically, plaintiff claims that the United States' fire suppression strategy involves discretionary governmental functions and policy judgments that cannot be second-guessed in a tort suit. Plaintiff further argues that Kernen's "setoff/recoupment" defense fails as a matter of law because the United States did not breach any legal obligation to Kernen that would entitle Kernen to monetary recovery.

#### 1. Discretionary Policy Decisions

Sovereign immunity prohibits suit against the United States without its consent. United States v. Mitchell, 463 U.S.

---

[10] Because Section 13009.2 violates the doctrine of intergovernmental immunities, the court need not decide whether Section 13009.2 is an appropriate rule for federal common law.

[11] Defendants also assert lack of proximate causation as an affirmative defense. Lack of proximate causation is not properly an affirmative defense. Plaintiff, as part of its case-in-chief, must establish that defendants' actions were the proximate cause of its injuries. See, e.g., Sierra Pac. Indus., 879 F. Supp. 2d at 1104. "A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). Accordingly, because the court does not consider lack of proximate causation to be an affirmative defense, it will not consider plaintiff's motion as applicable to that improperly pleaded defense.

13

206, 212 (1983). By filing suit, the United States does not waive sovereign immunity as to counterclaims that seek affirmative relief from the United States. United States v. Agnew, 423 F.2d 513, 514 (9th Cir. 1970). As an exception to this general rule, defendants can pursue counterclaims of set off or recoupment because those claims simply serve to reduce or eliminate the amount of money that would otherwise be awarded. See id. These claims do not result in an affirmative monetary judgment in favor of the defendant and against the United States. United States v. Washington, 853 F.3d 946, 968 (9th Cir. 2017), aff'd by an equally divided court, 138 S.Ct. 1832 (2018).

Affirmative defenses are more like claims for set off or recoupment than traditional counterclaims. Cf. Quinault Indian Nation v. Pearson for Estate of Comenout, 868 F.3d 1093, 1098 (9th Cir. 2017) (finding that tribal sovereign immunity only barred the defendant's counterclaims, not the assertion of affirmative defenses). Affirmative defenses are responses to an action or claim; they are not freestanding entitlements to relief. See Nat'l Union Fire Ins. Co. of Pittsburgh v. City Sav., F.S.B., 28 F.3d 376, 393 (3d Cir. 1994) (citing Black's Law Dictionary 419 (6th ed. 1990)); see also F.D.I.C. v. Stovall, No. 2:14-CV-00029-WCO, 2014 WL 8251465, at *9 (N.D. Ga. Oct. 2, 2014) (noting that if defendants tried to bring a freestanding "claim" for the failure to mitigate damages, they would not be entitled to any relief because their remedy would be a reduction in damages for a non-existent claim.). Like recoupment and set off, the other affirmative defenses at issue on this motion only seek to limit the damages that the United States may collect, not

entitle defendants to any independent relief.[12]

Moreover, the Supreme Court and Ninth Circuit conceive of sovereign immunity as a jurisdictional doctrine. Mitchell, 463 U.S. at 212 ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." (emphasis added)); Daniel v. Nat'l Park Serv., 891 F.3d 762, 765-66 (9th Cir. 2018) ("Both Article III standing and sovereign immunity are threshold jurisdictional issues that we review de novo." (emphasis added)). In federal court, jurisdictional inquiries only apply to claims. See, e.g., 28 U.S.C. § 1367(a) (supplemental jurisdiction). A court would not determine whether there is jurisdiction over a particular affirmative defense because it presumably would have jurisdiction over the claim to which the affirmative defense is being asserted against. Only where the court does not have jurisdiction over the claim would it not have jurisdiction over the related affirmative defense. Plaintiff has not pointed to any examples that show otherwise. Additionally, it would be nonsensical to require independent federal jurisdiction over an affirmative defense where lack of jurisdiction is a defense. See Fed. R. Civ. P. 12(b)(1) & (2).

Plaintiff points to federal case law interpreting the Federal Tort Claims Act's ("FTCA") discretionary function

---

[12] Separately, transforming sovereign immunity from a shield into a sword is not consonant with the purposes of the doctrine. See United States v. Lee, 106 U.S. 196, 208 (1882) (finding that sovereign immunity protects against interference with the sovereign's performance of public duties by preventing parties from repeatedly subjecting the sovereign to suit); see also Alaska v. United States, 64 F.3d 1352, 1355 (9th Cir. 1995) (holding that sovereign immunity is a defense to payment of damages).

15

exception and state law to support its argument that sovereign immunity principles apply to affirmative defenses as well as claims.

Federal case law interpreting the FTCA is not entirely relevant. The FTCA is a waiver of the United States' sovereign immunity. Blackburn v. United States, 100 F.3d 1426, 1429 (9th Cir. 1996). The discretionary function exception limits the FTCA's waiver of immunity by <u>restoring</u> the government's immunity in certain contexts. Id. The discretionary function exception does not provide the government with additional statutory immunity that goes beyond the sovereign immunity the federal government traditionally enjoys. As discussed above, that sovereign immunity does not encompass immunity to affirmative defenses.

State law is similarly unhelpful. Federal law alone determines the scope of the United States' sovereign immunity. See Denson v. United States, 574 F.3d 1318, 1352 (11th Cir. 2009) (Carnes, J., concurring) ("The sovereign is sovereign over questions of sovereign immunity."). For example, the Ninth Circuit has held that a determination of whether the discretionary function exception applies and restores the federal government's sovereign immunity can be made only by looking at federal law. See Bailey v. United States, 623 F.3d 855, 861 n.2 (9th Cir. 2010) ("It is only after we determine as a matter of federal law that the discretionary function exception does not apply that we then evaluate whether the government can be held liable under the laws of the state where the act or omission took place."). The state court cases that plaintiff cites are

interpretations of duties that state public entities have under state law. See People ex rel. Grijalva v. Superior Court, 159 Cal. App. 4th 1072, 1078 (2d Dist. 2008). "State tort law duties are not relevant to the determination [of] whether the discretionary function exception applies." Bailey, 623 F.3d at 861 n.2 (citation omitted).

Although the discretionary function exception to the FTCA has no application per se to this case, this court does not necessarily rule out the possibility that considerations similar to those underlying the discretionary function exception to the FTCA may preclude or limit a finding of negligence on the part of the United States, even in the context of an affirmative defense. Because this action was brought under 28 U.S.C. § 1345, this court is not required to apply state substantive law where federal law is not clear. California, 655 F.2d at 916–17. Instead, this court remains free to displace state law if it would frustrate federal policies, objectives, or programs. Id. at 917.

Therefore, the court may consider whether defendants should or should not be permitted to borrow state law affirmative defenses that would call into question the government's discretionary actions. For example, some circuits have refused to consider affirmative defenses like the failure to mitigate damages because those affirmative defenses would require judicial second-guessing of governmental decisions grounded in social, economic, or political policy. See, e.g., F.D.I.C. v. Mijalis, 15 F.3d 1314, 1324 (5th Cir. 1994); F.D.I.C. v. Oldenburg, 38 F.3d 1119, 1121–22 (10th Cir. 1994); F.D.I.C. v. Bierman, 2 F.3d

17

1424, 1441 (7th Cir. 1993).

It would premature, however, for the court to make such a determination in the context of the pending motion. While there has been some discovery in this case, it has yet to be developed exactly what social, economic, or political policies were considered and the extent to which those policies may have played a role in fighting the Flat Fire. The government points to defendants' retained expert's deposition testimony that the decisions which form the basis for defendants' affirmative defenses involved judgment and choice. Defendants, on the other hand, point to other evidence suggesting the decision to use an indirect attack on the fire was based on technical, scientific or engineering considerations.

Whether, and the extent to which, the government's firefighting decisions may have been grounded in social, economic, or political policy will need to be further explored before the court can ultimately decide whether those decisions may form the basis of a defense of comparative negligence or failure to mitigate damages on the part of the United States.

Accordingly, the court denies summary judgment as to the affirmative defenses of comparative fault and failure to mitigate damages.

2. Setoff/Recoupment

In its motion in opposition, Kernen presents no argument in favor of its "setoff/recoupment" affirmative defense. Recoupment and setoff are equitable defenses under which a defendant may seek to offset sums owing to the plaintiff against sums owing from the plaintiff to the defendant. See Newbery

Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398 (9th Cir. 1996) (citation omitted); see also Cal. Civ. Proc. Code § 431.70. Under California law,[13] to determine whether a defendant is entitled to a setoff, "[t]he test is whether the defendant could have maintained an independent action on the demand attempted to be set off."[14] Cuneo v. Lawson, 203 Cal. 190 (1928). Because Kernen does not describe any legal theory that entitles it to recovery, it does not demonstrate that it could maintain an independent action against the United States.

Accordingly, Kernen's "setoff/recoupment" defense fails as a matter of law.

IT IS THEREFORE ORDERED that:

1. Plaintiff's motion for partial summary judgment (Docket No. 58) is GRANTED and defendant intervenor's motion for partial summary judgment (Docket No. 63) is DENIED as to the claim for declaratory relief as to California Health & Safety Code § 13009.2. Section 13009.2 is unconstitutional as applied to claims brought by the United States.

2. Plaintiff's motion for partial summary judgment as to defendants' affirmative defenses (Docket No. 60) is GRANTED IN PART and DENIED IN PART. The motion as to

---

[13] As explained previously, for actions brought under 28 U.S.C. § 1345, federal courts borrow state substantive law where appropriate. California, 655 F.2d at 916–17.

[14] Recoupment also requires that a defendant be able to maintain an independent action against the plaintiff on the amount to be recouped. See McKean v. German-Am. Sav. Bank, 118 Cal. 334, 341, 50 P. 656, 659 (1897) ("Whether as counterclaim or set-off or recoupment, or whatever other form the defense may assume, it is, for the purpose of the defense, an action against the plaintiff pro tanto.")

19

Kernen's affirmative defense of "setoff/recoupment" is GRANTED.  Kernen cannot raise that affirmative defense at trial.  The motion as to defendants' affirmative defenses of comparative fault and failure to mitigate damages is DENIED.

Dated: October 16, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE